# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

JASON RYAN DESAUTEL,

      Petitioner,

v.                                  Case No. 8:12-cv-1014-T-36TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.
_____/

## ORDER

      Petitioner Jason Ryan DeSautel, an inmate in the Florida Department of Corrections proceeding *pro se*, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Dkt. 1). He challenges his conviction entered in 2004 by the Circuit Court for the Twelfth Judicial Circuit, Manatee County, Florida. Respondent filed a response (Dkt. 9), and DeSautel filed a reply (Dkt. 16). Upon review, the petition must be denied.

## PROCEDURAL HISTORY

      A jury convicted DeSautel of robbery with a firearm, finding that he carried a firearm during the course of the crime. (Ex. 2.) He received a sentence of forty years in prison, with a ten-year minimum mandatory term for carrying a firearm. (Ex. 2.) The state appellate court *per curiam* affirmed DeSautel's judgment and sentence. (Ex. 6.) DeSautel filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850,

followed by an amended motion.   (Exs. 8, 9.)  The state court summarily denied DeSautel's

postconviction claims, and the state appellate court *per curiam* affirmed the denial.  (Exs.

10, 13.)  While his postconviction motion was pending, DeSautel filed a petition for writ of

habeas corpus alleging ineffective assistance of appellate counsel.  (Ex. 15.)  The state

appellate court denied the petition without comment.   (Ex. 16.)   Respondent does not

contest the timeliness of DeSautel's federal habeas petition.

## FACTS[1]

At approximately 6:30 to 6:45 a.m. on May 15, 2003, Roy and Marjorie Vanderklok

were in their driveway, loading their car for a trip and talking to a neighbor.  Roy Vanderklok

saw a white Dodge Neon with a blue pinstripe slowly drive past.  Two black men were in

the front of the car and one white man was in the back.  The car traveled out of sight but

returned about three minutes later and stopped.  The white man in the back seat exited the

vehicle from the rear driver's side door, holding a gun in his hand.  He approached Roy

Vanderklok, pointed the gun at him, and demanded his wallet.  The man took a day planner

from Roy Vanderklok's shirt pocket and got back into the car.  The car drove away.

Roy Vanderklok called 911 and provided the car's license plate number, along with

a description of the car and its occupants.  Deputy Brett Getman observed a vehicle

matching the description at approximately 7:00 a.m.  After officers chased the car for about

ten minutes, it crashed.  A white male jumped out of the back seat.  Deputy Angelo

Buxeda, who had joined the vehicle chase, followed the man and caught him.  Buxeda kept

the man in his sight from the time the man exited the crashed car until the time he was

---

[1] This summary is derived from the briefs on appeal and the evidence adduced at trial.

apprehended.  The man identified himself as Jason DeSautel when Buxeda took him back to the scene of the crash.  Deputy Dennis Sanders, Jr., who responded to the crash, looked into the car and saw a revolver on the floorboard of the front passenger's side.  Sanders took the gun out of the car and removed five live rounds and a spent shell.

At approximately 7:45 to 8:00 a.m., Roy Vanderklok was taken to the scene of the crash.  Vanderklok recognized the car and identified DeSautel as the man who robbed him at gunpoint.  Vanderklok had no doubt with regard to his identification.  He also identified one of the other suspects as the driver of the car.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding.  *Wilcox v. Florida Dep't of Corr.,* 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied,* 531 U.S. 840 (2000).  Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Section 2254(d), which sets forth a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000), the Supreme Court interpreted this

deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied–the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established

federal law is objectively unreasonable . . . an unreasonable application is different from

an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694 (2002).  "As a condition for obtaining

habeas corpus from a federal court, a state prisoner must show that the state court's ruling

on the claim being presented in federal court was so lacking in justification that there was

an error well understood and comprehended in existing law beyond any possibility for

fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *Accord Brown*

*v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the

correctness *per se*, of the state court decision that [the federal court is] to decide.").  The

phrase "clearly established Federal law" encompasses only the holdings of the United

States Supreme Court "as of the time of the relevant state-court decision." *Williams*, 529

U.S. at 412.

The purpose of federal review is not to re-try the case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Cone*, 535 U.S. at 693. In other words, "AEDPA prevents defendants–and federal courts–from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster,* _U.S._, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion, the state appellate court affirmed the denial of DeSautel's postconviction motion. The state appellate court also denied DeSautel's state habeas petition without comment. These decisions warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied,* 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby,* 538 U.S. 906 (2003). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

Review of the state court decision is limited to the record that was before the state court. *Pinholster,* 131 S. Ct. at 1398. DeSautel bears the burden of overcoming by clear

and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

Before a district court can grant habeas relief to a state prisoner under § 2254, the petitioner must exhaust all state court remedies that are available for challenging his conviction, either on direct appeal or in a state postconviction motion. *See* § 2254(b)(1)(A); *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). *See also Henderson v. Campbeli*, 353 F.3d 880, 891 (11th Cir. 2003) ("A state prisoner seeking federal habeas relief cannot raise a federal constitutional claim in federal court unless he first properly raised the issue in the state courts.") (citations omitted). A state prisoner "'must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process,' including review by the state's court of last resort, even if review in that court is discretionary." *Fruitt v. Jones*, 348 F.3d 1355, 1358-59 (11th Cir. 2003) (quoting *O'Sullivan*, 526 U.S. at 845).

To exhaust a claim, a petitioner must make the state court aware of both the legal

and factual bases for his claim.  *See Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir. 1998) ("Exhaustion of state remedies requires that the state prisoner 'fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass on and correct alleged violations of its prisoners' federal rights.'") (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)).   A federal habeas petitioner "shall not be deemed to have exhausted the remedies available in the courts of the State . . . if he has the right under the law of the State to raise, by any available procedure, the question presented."  *Pruitt*, 348 F.3d at 1358.  The prohibition against raising an unexhausted claim in federal court extends to both the broad legal theory of relief and the specific factual contention that supports relief. *Kelley v. Sec'y, Dep't of Corr.*, 377 F.3d 1317, 1344 (11th Cir. 2004).

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim.  28 U.S.C. § 2254(b)(1); *Picara v. Connor*, 404 U.S. 270, 275-76 (1971) (federal courts "have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").   Therefore, to exhaust a claim, a petitioner must "do more than scatter some makeshift needles in the haystack of the state court record."  *McNair v. Campbell*, 416 F.3d 1291, 1303 (11th Cir. 2005).

The doctrine of procedural default provides that "[i]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."  *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001).  To establish cause for a procedural default, a petitioner "must

demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F. 3d 695, 703 (11th Cir. 1999). *See also Murray v. Carrier*, 477 U.S. 478 (1986).   To show prejudice, a petitioner must demonstrate not only that the errors at his trial created the possibility of prejudice but that they worked to his actual and substantial disadvantage and infected the entire trial with error of constitutional dimensions.   *United States v. Frady*, 456 U.S. 152 (1982).   The petitioner must show at least a reasonable probability of a different outcome.   *Henderson*, 353 F.3d at 892; *Crawford v. Head*, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

Alternatively, a petitioner may obtain federal habeas review of a procedurally defaulted claim if review is necessary to correct a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); *Carrier*, 477 U.S. at 495-96.   A fundamental miscarriage of justice occurs in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995); *Henderson*, 353 F.3d at 892.   This exception requires a petitioner's "actual" innocence.   *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001).   To meet this standard, a petitioner must show a reasonable likelihood of acquittal absent the constitutional error.   *Schlup*, 513 U.S. at 327.

## DISCUSSION

### Ground One

DeSautel asserts that the state trial court erred in making two evidentiary rulings, resulting in a violation of his federal due process rights.   DeSautel presented a

misidentification defense, alleging that Michael Snodgrass, the owner of the car involved in this incident, committed the robbery.  DeSautel argues that the trial court erred when it excluded evidence that Snodgrass failed to appear for a deposition, which he believes showed that Snodgrass tried to avoid prosecution.  DeSautel further asserts that the trial court erred by allowing the State to introduce a gun that could not be connected to him.

DeSautel raised these claims of trial court error on direct appeal. (Ex. 4.)  However, he did not raise the constitutional dimension of the claims to the state appellate court.  (Id.) "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution." *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) (quoting *Duncan v. Henry*, 513 U.S. 364 (1995)).  "[T]o exhaust state remedies, petitioners must . . . articulate the constitutional theory serving as the basis for relief." *Id.* (quoting *Henry v. Dep't of Corr.*, 197 F.3d 1361, 1366 (11th Cir. 1999)).

By failing to raise a federal constitutional question in his state court pleading, DeSautel did not exhaust the claims presented in his federal habeas petition. *See Duncan*, 513 U.S. at 365-66; *Picard*, 404 U.S. at 275-76; *McNair*, 416 F.3d at 1303.  DeSautel cannot return to state court to file an untimely, successive direct appeal. *See* Fla. R. App. P. 9.140.  Consequently, these claims are procedurally defaulted. *See Smith v. Jones*, 256 F.3d at 1138.  DeSautel neither argues nor demonstrates that the cause and prejudice or fundamental miscarriage of justice exception applies to overcome the default. *Id.*

Within Ground One, DeSautel also claims that the *per curiam* affirmance issued by the state district court of appeal was not an adjudication on the merits of his claims and

deprived him of his right to be heard by the Florida Supreme Court, thereby violating his federal rights to due process and equal protection.  To the extent DeSautel intends to raise an independent claim for relief, it must fail.  Preliminarily, this is not a valid ground for relief because it challenges state procedure rather than the validity of DeSautel's conviction.  It is not within the purview of a federal habeas court to determine whether the state courts followed proper state procedure unless any error amounts to a federal constitutional violation.  *See Dorsey v. Chapman*, 262 F.3d 1181, 1190 n.11 (11th Cir. 2001); *McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir. 1992).

DeSautel does not establish that the district court of appeal failed to hear the merits of his claims.  *See, e.g., Crittenden v. State*, 67 So.3d 1184, 1185 n.1 (Fla. 5th DCA 2011) ("We reiterate that a per curiam affirmance without opinion is not an indication that the case was not considered on the merits.  Each and every appeal receives the same degree of attention.").  Nor does he show that he had a right to be heard by the Florida Supreme Court, which has explained that it is without authority to hear an appeal of a *per curiam* affirmance because of the limitations on its jurisdiction set forth in Article V, section 3(b), of the Florida Constitution.  *See Wells v. State*, 132 So.3d 1110, 1112-13 (Fla. 2014).  *See also* Fla. R. App. P. 9.030(a)(2).  Accordingly, "a district court [of appeal's] decision rendered without opinion or citation constitutes a decision from the highest state court empowered to hear the cause."  *Wells*, 132 So.3d at 1112 (quoting *Fla. Star v. B.J.F.*, 530 So.2d 286, 288 n.3 (Fla. 1998)).

DeSautel asserts that he would have been able to invoke the Florida Supreme Court's discretionary jurisdiction had the district court of appeal entered a written opinion.

However, he does not show that the district court of appeal was obligated to enter a written opinion.  Even assuming the district court of appeal had done so, it is not apparent that the opinion would have provided a basis to invoke the Florida Supreme Court's discretionary jurisdiction, or that that Court would have exercised its discretionary jurisdiction and reviewed his case.  DeSautel does not establish a constitutional violation, and this claim cannot provide federal habeas relief.  Accordingly, DeSautel is not entitled to relief on Ground One.

**Ground Two**

DeSautel alleges ineffective assistance of trial counsel in Ground Two.  He raises nine sub-claims.

**Standard For Claims Of Ineffective Assistance Of Counsel**

Ineffective assistance of counsel is a difficult claim to sustain.  "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between."  *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)).  Claims of ineffective assistance of counsel are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984):

> The law regarding ineffective assistance of counsel claims is well settled and well documented.  In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims.  According to *Strickland*, first, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998). In order to show deficient performance, a petitioner must demonstrate that "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* Additionally, "a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.*

DeSautel must demonstrate that counsel's alleged errors prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. To show prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Counsel's strategic choices "made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. A petitioner cannot meet his burden merely by showing that counsel's choices were unsuccessful:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested

in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992).  *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (en banc) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Sustaining a claim of ineffective assistance of counsel on federal habeas review is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Pinholster*, 131 S. Ct. at 1410 (a petitioner must overcome the "'doubly deferential' standard of *Strickland* and AEDPA.").

If a claim of ineffective assistance of counsel can be resolved through one of the *Strickland* test's two prongs, the other prong need not be considered.  466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds.").

<u>Sub-claim One</u>

DeSautel argues that counsel was ineffective for not moving to suppress Roy

Vanderklok's out-of-court identification.[2] DeSautel claims that the suggestive circumstances of the show up led Vanderklok to misidentify him.   DeSautel additionally claims that counsel's ineffective assistance deprived him of his right to due process and prevented an adversarial testing of the State's case.   DeSautel raised this claim in his postconviction motion, which the state court summarily denied:

> In order to prevail on this claim, the Defendant must allege facts sufficient to show that his counsel had a valid basis for filing a motion to suppress *and* that there is a reasonable probability the motion would have been granted. Without expressly ruling on the former, the Court finds that the Defendant's claims under this ground fail to meet the latter requirement.
> This case involved a "show-up" identification, which "occurs when the police take a witness shortly after the commission of an observed crime to where they are detaining a suspect, thereby giving the witness an opportunity to identify the suspect as the perpetrator of the crime."   Although "show-up identifications "always carry some degree of suggestiveness because the witness is presented with only one suspect for identification," such an identification "is not invalid if it does not give rise to a substantial likelihood of irreparable misidentification given the totality of the circumstances."   The Second District Court of Appeal has summarized the test and factors a court should consider when determining whether an out-of-court identification should be suppressed:
>
> > "The determination of whether to exclude an out-of-court identification is determined by a two-pronged test: (1) whether the police used an unnecessarily suggestive procedure and (2), if so, considering all the circumstances, whether the suggestive procedure gave rise to a substantial likelihood of irreparable misidentification.   The factors to be considered in evaluating the likelihood of misidentification include (1) the opportunity of the witness to view the criminal at the time of the crime, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description of the criminal, (4) the level of certainty demonstrated by the witness at the confrontation, and (5) the length of time between the crime and the confrontation."
>
> In the instant action, the victim, Mr. Roy Vanderklok, was within arm's

---

[2] Roy Vanderklok, Detective Thomas Petty, and Officer William Linkenhoker testified with regard to Vanderklok's out-of-court identification at the show up.  (Ex. 17, pp. 105-107, 196-97, 209-210.)

reach of the perpetrator when the perpetrator, with gun in hand, removed Vanerklok's day planner (apparently mistaking it for a wallet) from Vanderklok's front shirt pocket.  Although this crime occurred between approximately 6:30 and 6:45 in the morning on May 15, 2003, Vanderklok testified at trial that it was "fully light" and there was no need for the illumination of street lights or car headlights.  Thus, Vanderklok had ample opportunity to closely observe the perpetrator and was even able to accurately note the tag number of the get-away vehicle, which was successfully used in a BOLO released shortly after the incident.  Moreover, Vanderklok was direct and certain in his identification, which was made within an hour of the crime, of the Defendant as the perpetrator.

Under such circumstances, where Vanderklok had the opportunity to view the perpetrator closely and his identification of the Defendant was made shortly after the crime, without hesitation, the Court finds that the show-up identification of Defendant as the perpetrator did not give rise to a substantial likelihood of irreparable misidentification.  It follows that even if Defendant's trial counsel had moved to suppress Vanderklok's identification of the Defendant, such a motion would likely have been denied.  Having failed to establish prejudice, the Defendant's claims under Ground I will be denied.

(Ex. 10, pp. 4-6) (court's footnotes omitted).

The record supports the state court's conclusion. "It is the likelihood of misidentification which violates a defendant's right to due process." *Neil v. Biggers*, 409 U.S. 188, 198 (1972).  "Determining whether an identification is so unreliable as to violate due process requires [a court] to answer two questions: (1) whether the original identification procedure was unduly suggestive; and if so, (2) whether the procedure, given the totality of the circumstances, created a substantial risk of misidentification at trial." *Marsden v. Moore*, 847 F.2d 1536, 1545 (11th Cir.1988).  The critical inquiry concerns the reliability of the identification, even if the procedure was suggestive.  *See Biggers*, 409 U.S. at 199; *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).  "[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the

witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Biggers*, 409 U.S. at 199-200.

The state court applied these factors in evaluating DeSautel's claim.  Here, even if the out-of-court identification procedure could be construed as unduly suggestive, Vanderklok's identification of DeSautel did not create a substantial likelihood of misidentification.  The record in this case, as thoroughly described in the postconviction court's order, supports the finding that a motion to suppress Vanderklok's out-of-court identification probably would have failed given the reliability of the identification.  DeSautel does not show a due process violation, and the state court's conclusion that DeSautel did not establish prejudice under *Strickland* is supported.  DeSautel does not show that the postconviction court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.  Ground Two, Sub-claim One warrants no relief.[3]

<u>Sub-claim Four</u>

DeSautel argues that counsel was ineffective for failing to object when the court indicated it would allow jurors to ask questions of the witnesses.  DeSautel asserts that this practice is "inherently prejudicial." (Dkt. 1, p. 25.)   In his reply, DeSautel further asserts that this practice enables jurors to form opinions about the case prior to deliberations, and relieves the State of its burden of proof because facts could be drawn from the jury's

---

[3] To the extent DeSautel argues that counsel's conduct deprived him of "adversarial testing" of the State's case, he is not entitled to relief.  He does not explain his argument.  The defense cross-examined Roy Vanderklok about his observations of the robber as well as his out-of-court identification. (Ex. 17, pp. 113-20.) Counsel also cross-examined Petty and Likenhoker about the circumstances of the identification.  (Id., pp. 198-200, 212-14.)  DeSautel does not show prejudice as a result of counsel's performance.

questions, rather than the State's questions.  He raised this claim in his postconviction

motion, which the state court denied:

> The Defendant has not made a cognizable claim for ineffective assistance of counsel under this ground.  First, the Defendant has failed to allege any specific questions asked by the jury and how such questions prejudiced him.  It is well settled that a defendant bears the burden of establishing a *prima facie* case based upon a legally valid claim, and mere conclusory allegations are insufficient to meet this burden.  This Court finds that the Defendant's conclusory allegation–that his counsel should have objected to the jury asking questions, in general, of witnesses–fails to meet his burden for this ground.
>
> Second, the Defendant's claim is cut short by the fact that the Florida Supreme Court and district courts have already approved jury questioning of witnesses in criminal cases, so long as the judge controls the procedure.  In the present case, the trial judge controlled the procedure by setting forth the following standard for the jury to submit questions:
>
> > I also permit jurors to ask questions after the witnesses have completed their testimony.  Now, the procedure for that is as follows.  After the lawyers have asked all their questions, if you have a question of the witness you will write it down on a piece of paper.  The bailiff will hand the paper to me.  I will look to see if the question is a legally permissible question to ask.  If it is, I'll call the lawyers to the Bench, review the question with them to see if they have any input.  Then I'll ask the witness the question.

The Court further clarified these instructions:

> > The types of questions that are permissible are questions that are seeking additional factual information.  Let's say somebody doesn't tell you a distance or they don't tell you a time, or they don't tell you a color.  Anything of a factual nature that you want to have presented to you that might have been overlooked, we'll try to get an answer. Obviously, I can't answer the question such as, well, Witness A said this and Witness B said that, how am I supposed to know which one's telling the truth?  That's what your job is.

> Lastly, this Court is also unconvinced by the Defendant's claim that allowing the jurors to ask such questions somehow equates to the jurors forming a "prior tentative opinion."  Indeed, the trial judge repeatedly advised the jury *not* to discuss the case or deliberate before the appropriate time.  For example, the trial judge explained,

> After all the witnesses have testified, the lawyers will make their closing arguments. I'll then instruct you on the law, and then the Jury will retire to deliberate.
>
> You should not form any definite or fixed opinion on the merits of the case until you've heard all the evidence, the argument of the lawyers, and the instructions on the law from me. And until that time, you shall not discuss the case among yourselves.

> Thus, although the jurors were advised that they could submit their own individual questions, they were also strongly advised not to discuss the case amongst themselves until the appropriate time and not to form any fixed opinions until the conclusion of the trial. Other than the Defendant's conclusory allegation, there is no evidence in the record that the jury did not heed these instructions.
>
> In light of the foregoing, the Defendant has failed to establish that he was prejudiced by the jurors being permitted to ask questions. This Court further finds the Defendant's counsel could not be ineffective for failing to raise a pointless objection to the authorized practice of allowing jurors to ask questions under a controlled procedure. Therefore, the Defendant's post conviction motion is also denied as to this ground.

(Ex. 10, pp. 13-14) (court's footnotes omitted)

As the postconviction court indicated, Florida law allows jurors to pose questions to witnesses:

> In *Ferrara v. State*, 101 So.2d 797 (Fla. 1958), we stated that on appropriate occasions a juror, as a trier of fact, "might be completely justified in propounding a question," and that a procedure that allows jurors to ask questions during trial "should be . . . controlled by the discretion of the trial judge." *Id.* at 801. Relying on *Ferrara* and other precedent, this Court has rejected a claim that the trial court violated the defendant's right to an impartial jury by allowing jurors to submit questions to witnesses during trial. *See Watson v. State*, 651 So.2d 1159, 1163 (Fla. 1994). Under the procedure approved in *Watson*, the jury members would write down their question and give it to the trial judge, who would then consult with the State and the defense to determine whether the questions was proper. *See id.* at 1163 n. 6. If it was determined that the question was proper, the trial judge would present the question to the witness for an answer. *See id.* We observed that the practice of questioning by jurors "has been condoned as permissible trial procedure." *Id.* at 1163.

*Morris v. State*, 931 So.2d 821, 828-29 (Fla. 2006).  Procedures similar to those discussed in *Morris* appear to have been utilized in DeSautel's case.  The jury had questions for only one witness, Marjorie Vanderklok, who testified with regard to her observations of the robbery.  The record reflects that the judge instructed the juror or jurors to write the questions down, and discussed the questions with counsel.  (Ex. 17, pp. 127-28.)  The court then presented the jury's questions to Marjorie Vanderklok:

> THE COURT:        Ms. VanderKlok, I have a question for you.
>
>                   Were you able to tell how many people were in the car?
>
> THE WITNESS:      No, not really.  When I saw the white man get back into the back seat, I saw that there was a black man in the driver's seat.  He had the window down, and he had beads like in his hair.
>
> THE COURT:        Did you see anyone else in the rear seat other than the man who had gotten out earlier and then returned to that spot?
>
> THE WITNESS:      No, I did not, Your Honor.
>
> THE COURT:        All right.  Thank you.

(Ex. 17, p. 128.)[4]  DeSautel does not demonstrate that counsel was ineffective for not objecting to this procedure.  Counsel had no basis to object to the court's decision allowing jurors to ask questions of the witnesses because Florida law permits this.  Counsel cannot be deemed ineffective for failing to raise meritless arguments. *See Brownlee v. Haley,* 306 F.3d 1043, 1066 (11th Cir. 2002); *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001).  There is no indication from the record that the trial court did not follow applicable procedures.  Additionally, the questions presented to Marjorie Vanderklok involved her

---

[4] The victim's name appears in the state court record as both Vanderklok and VanderKlok.

personal observations of the events.

Further, as the state court noted, DeSautel did not demonstrate that any of the jurors formed a fixed opinion before deliberations.  Similarly, while the prosecution bears the burden of proving the elements of the offense, DeSautel does not establish that the jurors' questions served to shift the burden of proof from the State, despite his claim that Marjorie Vanderklok's answers supported the State's case.  DeSautel fails to demonstrate that counsel was ineffective for not objecting to the court's procedures or its decision in permitting jury questions, or how he was prejudiced by counsel's performance.  Accordingly, he does not establish that the state court's decision was an unreasonable application of *Strickland*, or based upon an unreasonable determination of the facts.  DeSautel is not entitled to relief on Ground Two, Sub-claim Four.

<u>Sub-Claim Two</u>

DeSautel called co-defendant Robert Griffin at trial.  Griffin testified that he was in the car with DeSautel, Snodgrass, and Carlton Presha, and that Snodgrass got out of the car carrying a gun and approached the victim while DeSautel ducked down in the back seat.  (Ex. 17, pp.235-37, 240.)  Griffin also testified that DeSautel had nothing to do with the armed robbery, and that he never saw DeSautel with a firearm.  (Id., pp. 237-38.)

Following Griffin's testimony, the State re-called one of its witnesses, Detective Thomas Petty, in rebuttal.  Petty testified about a statement Griffin made to him, in which Griffin implicated DeSautel as the robber but made no mention of Snodgrass's presence.  (Id., pp. 262-64.)  Petty further testified that he interviewed Snodgrass but that Snodgrass was not charged in connection with this offense.  (Id., p. 263.)

DeSautel alleges that counsel was ineffective for failing to advise him of Griffin's statement to Petty.  DeSautel claims that counsel should have known  the State would use this information to discredit Griffin if Griffin testified favorably for the defense.  DeSautel claims that counsel's deficiencies prevented him from making an informed and intelligent decision whether to call Griffin, and led him to decide not to testify in his own defense.

DeSautel raised these allegations in his postconviction motion.  The state court found that DeSautel could not show prejudice on his claim that counsel was ineffective regarding whether to call Griffin to testify, which he raised as Ground II:

> For the following reasons, the Court finds that the Defendant has failed to establish the necessary prejudice in order to merit relief under this ground.  First, by the Defendant's own admission, he "repeatedly informed counsel" that Griffin was willing to testify for the Defendant.  Thus, it appears that defense counsel called Griffin to testify at the Defendant's own insistence.
> . . . .
> Notably, Deputy Angelo Buxedo testified at trial that he observed the Defendant exit the get-away car after it crashed into another vehicle and immediately gave chase when the Defendant proceeded to run from the scene, eventually apprehending the Defendant without ever losing sight of him.  In addition to suggesting a consciousness of guilt, this testimony prevented any defense argument that the Defendant was not, at the very least, present in the car that was the subject of the BOLO issued pursuant to Vanderklok's report of the robbery.  Unable to deny his involvement, the Defendant's only remaining defense was likely the one presented (*i.e.*, that one of the other occupants of the get-away vehicle was the actual gun-wielding robber).  As the State points out, there were two ways to support this theory, but neither option was ideal.  While Griffin's testimony was impeached with his prior statements to police, the Defendant's testimony would have also been impeachable with his prior three felony convictions and one crime of dishonesty, *and* would have subjected the Defendant to the inherent dangers of cross-examination by the State.
> Even assuming without deciding that defense counsel's decision to call Griffin to testify was deficient, in light of the evidence against the Defendant, the Court's confidence in the outcome of the trial has not been undermined by the Defendant's allegations in this ground.  As noted in Ground I *supra*, Vanderklok, who positively and without hesitation identified the Defendant as the individual who robbed him at gun-point, was also able

to accurately record the make, model, color, and license tag number of the get-away car.  In large part due to the information provided by Vanderklok, the Defendant was apprehended by Deputy Buxedo, who never lost sight of him as he exited the get-away car and ran from police, demonstrating his consciousness of guilt.  Based on this evidence, even if defense counsel had never called Griffin to testify, the Court is convinced that the outcome of the trial would have been the same.  Thus, the Defendant has failed to establish prejudice and this claim will be denied.

(Ex. 10, pp. 7-8) (court's footnotes omitted)[5]

The state court's determination is entitled to deference, and the record supports the

finding that DeSautel failed to demonstrate prejudice in light of the evidence of his guilt.

The state court also denied DeSautel's claim that counsel was ineffective for interfering with

his right to testify when counsel did not inform DeSautel of Griffin's inconsistent prior

statement, which he raised as Ground III of his postconviction motion:

> Alleging similar claims as those raised in Ground II above, the Defendant maintains that "but for counsel's failure he would have testified that Michael Snodgrass committed the robbery while the Defendant remained hidden in the rear floorboard of the car."
>
> In denying this claim, the Court adopts and incorporates herein all findings and reasoning set forth in Ground II *supra*.  The Court also finds that the Defendant's claim that he would have testified in his own defense if he had known that Griffin's testimony would be impeached is conclusively refuted by the record.  As the State points out in its Response,
>
>> At the end of the entire case, including closing arguments, the Court did a lengthy colloquy inquiring of the Defendant as to whether he is satisfied with his decision to not testify, and informing him that he still has the right to testify . . . .[T]he Defendant assured the Court that he did not want to testify, that he discussed this decision fully with counsel going over the advantages and disadvantages of testifying, that no one pressured him, and that there is no other evidence he wished to present.  The colloquy ended with Defendant stating that he thinks his attorney did a "wonderful job" and that he is "entirely" satisfied with the work he has done on his behalf.

---

[5] The deputy's last name appears in the state court record as both Buxeda and Buxedo.

> Thus, even after Griffin's testimony was impeached, the Defendant declined
> to testify on his own behalf.  This claim is, therefore, denied.

(Ex. 10, pp. 8-9) (court's footnotes omitted)

The record supports the state court's denial of this claim.  After Petty was re-called, the trial court asked DeSautel whether he was going to testify.  The court told DeSautel that, although the testimony had been completed, the jury could still be brought back to hear DeSautel testify if he chose to do so.  (Ex. 17, p. 317.)  DeSautel stated that he made the decision not to testify upon consulting with counsel.  (Id., pp. 317-18.)  DeSautel further indicated that his choice was made freely and voluntarily, and that he was satisfied with counsel's performance.  (Id., p. 318.)

DeSautel fails to meet his burden under *Strickland* and therefore does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claims.  Ground Two, Sub-claim Two warrants no relief.[6]

### Sub-claim Seven

When Detective Petty was re-called by the State, he testified that Snodgrass stated that he loaned his vehicle to DeSautel the night before the robbery.  DeSautel argues that counsel was ineffective for failing to object to this testimony, which directly implicated him,

---

[6] In his reply, DeSautel further argues that, after Petty testified regarding Griffin's statement, counsel should have asked the court for a limiting instruction informing the jury that this testimony was not substantive evidence. Petitioners are generally prohibited from bringing new claims in a reply.  *See* Rule 2(c), Rules Governing Section 2254 Cases ("The petition must: (1) specify all the grounds for relief available to the petitioner . . . ."); Fed. R. Civ. P. 15(a) (a party is permitted to amend a pleading once "as a matter of course" at any time before a responsive pleading is served or, otherwise, only by leave of court or by written consent of the adverse party).  *See also Pruitt v. United States*, 274 F.3d 1315, 1318-19 (11th Cir. 2001); *Davenport v. United States*, 217 F.3d 1341, 1344 (11th Cir. 2000).  Even assuming this claim was properly raised in DeSautel's federal habeas proceeding, it would not entitle him to relief.  When DeSautel raised this claim in his postconviction motion, the state court denied it, finding that DeSautel could not show prejudice in light of the overwhelming evidence of guilt.  (Ex. 10, p. 18.)  DeSautel does not establish that the state court unreasonably applied *Strickland* or unreasonably determined the facts in rejecting his claim.

as hearsay. The state court denied this claim when DeSautel brought it in his

postconviction motion:

> This claim also fails to meet the Strickland prejudice requirement.  As the
> State suggests in its Response, the Defendant did not, likely could not, deny
> being in Snodgrass's vehicle (*i.e.*, the get-away car) at the time of the
> offense. Despite his "mistaken identity" theory of defense, the Defendant (1)
> was positively identified by Vanderklok as the individual who robbed him at
> gun-point and (2) was apprehended by Deputy Buxedo, who never lost sight
> of the Defendant as he exited the get-away car and ran from police,
> demonstrating his consciousness of guilt.  In addition to this evidence, neither
> Mr. or Mrs. Vanderklok, nor any of the law enforcement officers that
> subsequently pursued the get-away car ever noticed another white male in
> the vehicle.  In light of the above-listed evidence implicating the Defendant
> as the perpetrator, the Court finds that even if defense counsel was deficient
> in failing to object to Officer Petty's testimony concerning Snodgrass's
> hearsay statement, the Defendant was not prejudiced by the introduction of
> such hearsay.  This claim is denied.

(Ex. 10, pp. 17-18) (court's footnote omitted)

The record supports this determination.  Even assuming that counsel should have

objected to this statement, as the state court described, the record contains other evidence

of DeSautel's guilt. The record reflects other evidence linking DeSautel to the car, and a

lack of evidence indicating the presence of another white male in the car.  The state court's

finding that DeSautel failed to meet *Strickland*'s prejudice prong is supported.[7]   As

DeSautel does not show that the postconviction court's decision was an unreasonable

---

[7] To the extent DeSautel intends to present an independent, substantive claim that the admission of Snodgrass's statement through Petty's testimony violated his right to confrontation pursuant to *Crawford v. Washington*, 541 U.S. 36 (2004), he cannot obtain relief.  Notwithstanding the prohibition on raising new claims in a reply, this claim is unexhausted because DeSautel did not raise it on direct appeal. (Ex. 4.)  In Florida, claims of trial court error are properly raised on direct appeal.  *See Bruno v. State*, 807 So.2d 55, 63 (Fla. 2001).  This claim is also procedurally defaulted because DeSautel cannot return to state court to file a second, untimely direct appeal.  *See* Fla. R. App. P. 9.140.  He does not demonstrate that either exception applies to overcome the default.  *See Smith v. Jones*, 256 F.3d at 1138.  To the extent this argument is offered in support of DeSautel's ineffective assistance claim, it does not entitle him to relief because he fails to show prejudice under *Strickland*.

application of *Strickland* or based on an unreasonable determination of the facts, Ground

Two, Sub-claim Seven affords no relief.

Sub-claim Five

DeSautel claims that Deputy Sanders' testimony indicating that the car used in the

robbery was stolen was improper because it implied that DeSautel committed the

uncharged collateral crime of stealing the car.   He asserts that counsel was ineffective for

failing to object to this evidence and move for a mistrial.   DeSautel presented this argument

in his postconviction motion, which the state court denied:

> The Defendant's claims under this ground are conclusively refuted by the record.   As the State points out in its Response, the Defendant mischaracterizes the content of Deputy Sanders' testimony.   Although Deputy Sanders testified that he was initially under the impression that the get-away vehicle may have "possibly" been stolen, on cross-examination defense counsel elicited his acknowledgment that "there's no evidence that this was a stolen vehicle."   Because defense counsel was easily able to clarify this point, the Court finds that the Defendant was not prejudiced by his counsel's failure to also object to and further highlight Deputy Sanders' initial impression that the get-away vehicle was possibly stolen.   Absent a showing of prejudice, this claim is also denied.

(Ex. 10, p. 15) (court's footnotes omitted)

The record supports the state court's finding.   Sanders testified that, preliminarily,

he believed the car was stolen or possibly stolen.  (Ex. 17, p. 168.)  Counsel addressed this

point on cross-examination, and Sanders confirmed there was no evidence to indicate that

the car was in fact stolen.   (Id., pp. 176-77.)   Therefore, counsel's cross-examination

clarified the car's status.   The record supports the postconviction court's finding that

DeSautel failed to show prejudice.   DeSautel does not demonstrate that the state court's

finding was an unreasonable application of *Strickland* or was based on an unreasonable

Page 25 of  39

determination of the facts.  He is not entitled to relief on Ground Two, Sub-claim Five.

Sub-claim Six

The jury found that DeSautel carried a firearm.  (Ex. 2.)  DeSautel asserts that the jury instructions were improper because they did not specify that this finding must be made beyond a reasonable doubt.  DeSautel claims that counsel was ineffective for failing to object to the instructions.   In support of his ineffective assistance claim, DeSautel alleges in his reply, as he did in his postconviction motion, that the jury's finding was insufficient because, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), any fact that increases the penalty for a crime beyond the statutory maximum must be found by a jury beyond a reasonable doubt.[8]  The state court denied this claim when DeSautel raised it in his postconviction motion:

> As the Second DCA has previously summarized:
>
>> In *Apprendi*, the Court held that the Sixth Amendment right to trial by jury requires the application of the rule that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."
>
> . . . .
>
> The Defendant's present claim is less in line with the facts in *Apprendi* and more strikingly similar to claims raised in both *Ruger v. State* and *State v. Jacobs*, wherein the Fourth District Court of Appeal found such claims to be meritless.  Unlike *Apprendi*, where the sentencing enhancement was based on a *judge's* finding by a *preponderance* of the evidence standard, in the instant case, the *jury* made a factual finding that the Defendant carried a firearm during the commission of the robbery.  As did the Fourth DCA in *Ruger* and *Jacobs*, this Court rejects the Defendant's contention that the

---

[8] With regard to the firearm, the jury was instructed that, "The punishment provided by law for the crime of robbery is greater if, in the course of committing the robbery, the Defendant carried some kind of weapon . . . . If you find that the Defendant carried a firearm in the course of committing the robbery, you should find him guilty of robbery with a firearm."  (Ex. 17, p. 308.)  The definition of firearm was also provided.  (Id., p. 309.)

jury's finding was not proved beyond a reasonable doubt. Indeed, considering the initial general instructions provided–"It's your solemn responsibility to determine if the State has proved its accusations [impliedly all of them] beyond a reasonable doubt."– this Court highly doubts that the failure to reiterate the "beyond a reasonable doubt" standard when giving instructions about aggravating circumstances made any difference in this case. Although the jury instructions required the jury merely to "find" that the Defendant carried a firearm in order to find him guilty of the charged crime, when considering the instructions as a whole, the jury was instructed to apply the same burden of proof to all aspects of the case which the State was required to prove. Thus, the Court's confidence in the outcome of this case is not undermined by the Defendant's allegations in this ground, and it will be denied.

(Ex. 10, pp. 15-17) (court's footnotes omitted) (alteration in original)

The jury made a factual finding that DeSautel carried a firearm, and there is support for the state court's determination that he fails to show this finding was not made beyond a reasonable doubt.

On federal habeas review, alleged error in jury instructions is reviewed for the denial of fundamental fairness and due process. *See Henderson v. Kibbe*, 431 U.S. 145, 156–57 (1977). "[F]ederal courts on habeas review are constrained to determine only whether the challenged instruction, viewed in the context of both the entire charge and the trial record, 'so infected the entire trial that the resulting conviction violated due process.'" *Jamerson v. Sec'y for Dep't of Corr.*, 410 F.3d 682, 688 (11th Cir. 2005) (quoting *Estelle v. McGuire*, 502 U.S. 62, 72 (1991)). The jury was instructed that the State must prove its case beyond a reasonable doubt. (Ex. 17, pp. 81-82.) The jury was also told that if they had a reasonable doubt after considering all the evidence, they should find DeSautel not guilty. (Id., p. 311.)

DeSautel does not show that the instructions rendered his trial fundamentally unfair. He does not establish that the jury did not apply the same burden of proof to all of their

findings.  The applicable Florida law recognized by the state court further supports the state court's decision.[9]  Accordingly, DeSautel fails to demonstrate that counsel had a basis to object to the instruction or that he was prejudiced due to counsel's conduct.

DeSautel has not, therefore, demonstrated that the state court's decision was an unreasonable application of *Strickland* or was based on an unreasonable determination of the facts.  Ground Two, Sub-claim Six warrants no relief.[10]

<u>Sub-Claim Three</u>

DeSautel argues that counsel was ineffective for not moving to have the jury panel stricken following prejudicial comments by the court.  He states that a jury for another case was selected from a large panel of prospective jurors, and the jury for his case was then chosen from the remaining prospective jurors.  DeSautel alleges that the court made improper comments to the entire panel about the recent high-profile Carlie Brucia murder case.[11]  DeSautel raised this claim in his postconviction motion, to which he attached an affidavit stating:

---

[9] *See Ruger v. State*, 941 So.2d 1182, 1185 (Fla. 4th DCA 2006) (although the jury was only required to "find" that the defendant used a weapon, the general reasonable doubt instruction directs the jury to apply the same burden of proof to all aspects of the case); *State v. Jacobs*, 8 So.3d 448, 448-49 (Fla. 4th DCA 2009) (same).

[10] DeSautel appears to raise an independent, substantive claim of trial court error with regard to the jury instruction in his reply.  He may not bring a new claim in his reply.  Furthermore, this claim is unexhausted because DeSautel did not raise it on direct appeal.  (Ex. 4.)  DeSautel cannot return to state court to file a second, untimely appeal.  *See* Fla. R. Crim. P. 9.140.  This claim is procedurally defaulted, and DeSautel does not argue or demonstrate that an exception applies to overcome the procedural default. *See Smith v. Jones*, 256 F.3d at 1138.

[11] To the extent that DeSautel's reply presents an independent substantive claim that the trial court erred in making the comments DeSautel describes, this claim cannot provide relief.  Notwithstanding the bar on raising new claims in a reply, this claim is unexhausted.  DeSautel did not bring this claim on direct appeal.  (Ex. 4)  DeSautel cannot return to state court to file an untimely, successive appeal.  *See* Fla. R. App. P. 9.140.  The claim is thus procedurally defaulted, and DeSautel does not establish the applicability of either exception to overcome his default.  *See Smith v. Jones*, 256 F.3d at 1138.

I witnessed comments made by [the court] to a jury panel that was being instructed for the selection for two separate trials.  The other trial in front of my trial [sic], so their selection was before mine.  The comments made were not recorded in my voir dire, but were indeed made to the whole panel.  The comments and questions were in regards to a man arrested in Sarasota County, that County being joined to Manatee, the County in which I was accused.  The man arrested in Sarasota was Joseph Smith, his arrest occurred shortly before my trial began.  He was accused of abducting and murdering a young girl named Carlie Brucia.  The judge asked the jury to show their hands if they were aware of this incident and Joseph Smith being arrested. All prospective jurors raised their hands.  The judge then asked the jury for one more show of hands, he asked if anyone "thought that Joseph Smith was innocent."  Not one of the prospective jurors raised their hands. The judge then made further statements to the jury panel in regards to media coverage and newspaper articles about Joseph Smith being brought to trial in the past for similar accusations, that he was found not guilty by a jury.  The judge made further comments about the media and the community blaming the system for Carlie Brucia's abduction and murder, that if he (Joseph Smith) would have been convicted by a jury the first time he went to trial then he would have been in prison, instead he was free to commit more crimes. Again the judge commented that the media and the community point their fingers at people like you (jury panel) and the court for this happening. Society says that the system failed Carlie Brucia.

Had I known that my counsel could strike the panel, I would have asked him to do so.  Having the assistance and access to the law library and have learned [sic] the Judge's comments and questions were unfairly prejudicial.

(Ex. 8, Affidavit of Jason DeSautel.)  DeSautel argues that while the court might have merely attempted to address criticisms of the criminal justice system, the jury also could have interpreted such comments to mean that if DeSautel was acquitted, he would commit more crimes in the future.  During jury selection for DeSautel's trial, counsel addressed the matter with the jury panel:

One of the concepts that the Judge was talking about, one of the things he brought in early on is the obviously very tragic case in Sarasota, and is there anybody because of that case and the publicity associated with it does not want to sit on this type of case or sit on a criminal case at all, because they don't feel they can sit in moral judgment of another person?  Okay.
One of the things, I don't know if people, if you all have read, think

> about one of the criticisms that has been in the media has been criticism of the jury process, and apparently there was a case where this gentleman was actually acquitted by a jury, how could the jury be so stupid to acquit this guy on a previous case.   Is there anybody here that feels the same type of pressure, that they don't want to be on a jury that finds someone not guilty? Does anybody have an opinion on that one way or another?

(Ex. 17, pp. 59-60.)  The record reflects no response by any of the prospective jurors.  (*Id.*)

DeSautel argues, however, that the prejudice from these comments was so great that

counsel could not rehabilitate the prospective jurors.

In his motion for postconviction relief, DeSautel raised the claim that counsel was

ineffective for not moving to strike the entire jury panel.  The state court summarily denied

his argument:[12]

> This claim is utterly without merit.   First, the initial judicial comments, apparently made before the entire jury venire during jury selection in a preceding case, do *not* constitute impermissible comment, even as summarized by the Defendant in his motion.   Rather, as highlighted by defense counsel's subsequent questioning, such comments were designed to inquire whether potential jurors might feel either less inclined to serve on a jury in light of recent publicity, or pressured by media coverage of the court system in general to rule a certain way.   Moreover, there is no evidence of *any* juror bias in this case.
>
> In general, "[t]he test for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court."  "It is sufficient if a juror can lay aside his opinion or impression and render a verdict based on the evidence presented in court."   The Fourth

---

[12] In his reply, DeSautel further asserts that counsel should have conducted individual voir dire of the prospective jurors following the court's comments.   Again, he cannot raise a new claim in his reply.   Moreover, DeSautel did not raise this specific claim of ineffective assistance of counsel in his postconviction motion. (Ex. 8, pp. 13, 16-18.)  A petitioner may not present a particular factual instance of ineffective assistance of counsel in his federal habeas petition that he did not present to the state court. *McNair v. Campbell*, 416 F.3d at 1302; *Johnston v. Singletary*, 162 F.3d 630, 634-35 (11th Cir. 1998).   Because this claim was not fairly presented to the state court, it is unexhausted.   DeSautel cannot return to state court to file an untimely, successive postconviction motion. *See* Fla. R. Crim. P. 3.850(b), (h).   Thus, the claim is procedurally defaulted.   DeSautel does not establish the applicability of an exception to overcome this default. *See Smith v. Jones*, 256 F.3d at 1138.

District Court of Appeal has appreciably explained the requirements of a biased juror claim:

> Because a defendant must demonstrate prejudice in a 3.850 proceeding, post-conviction relief based on a lawyer's incompetence with regard to the composition of the jury is reserved for a narrow class of cases where prejudice is apparent from the record, where a biased juror actually served on the jury . . . . The nature of the juror's bias should be patent from the face of the record. Only where a juror's bias is so clear can a defendant show the necessary prejudice under *Strickland*.

As does the Fourth District Court of Appeal, this Court has "great confidence in the tendency of jurors to do the right thing after hearing the evidence in a case and being instructed on the law from the judge." In the instant action, the prejudice necessary for a valid ineffective assistance of counsel claim is not apparent from the record. Instead, to support this claim, the Defendant misconstrues judicial comments and defense counsel *voir dire* questions and assumes the panel's lack of response equates to a tainted jury. Despite the Defendant's allegations, this Court's exhaustive review of the entire transcript failed to turn up any evidence of juror bias. In failing to demonstrate any actual juror bias, the Defendant has failed to meet the prejudice prong of the *Strickland* test. Therefore, the Court will deny his motion as to this ground.

(Ex. 10, pp. 9-11) (court's footnotes omitted)

The state court's decision is entitled to deference. The state court found that any comments by the court, as summarized by DeSautel, were not improper because they were intended to determine if any prospective jurors would not want to sit on a jury or would feel obligated to vote to convict based upon public criticism of the courts.

Even taking as true DeSautel's characterization of the comments as improper and assuming that counsel should have moved to strike the entire jury panel, DeSautel fails to show prejudice.[13] Under the Sixth Amendment, a criminal defendant is entitled to a fair trial

_____

[13] Neither DeSautel nor Respondent provides the statements made by the trial court. Attachments to DeSautel's reply indicate that he attempted to obtain transcripts from the state court that he believes exist and would support his claim, but the state court denied his requests. (Dkt. 16-2, pp. 2-10.) The state court's orders do not acknowledge whether such documents or transcripts exist. (Ex. 10.) Even if DeSautel provided

by a panel of impartial jurors.  *See Parker v. Gladden*, 385 U.S. 363, 364 (1966).  However, as the state court found, DeSautel does not demonstrate that any juror in his case was actually biased.  In order to challenge a juror for cause, a party "must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed."  *United States v. Chandler*, 996 F.2d 1073, 1102 (11th Cir. 1993).  The party challenging the juror has the burden of demonstrating actual bias.  *Irvin v. Dowd*, 366 U.S. 717, 723 (1961).  Similarly, to be entitled to postconviction relief in state court when claiming that a juror was biased, the party must prove that a juror was actually biased.  "[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased."  *Carratelli v. State*, 961 So.2d 312, 324 (Fla. 2007).  This requires a showing that the juror was not impartial.  *Id.*

DeSautel offers no evidence that any juror who heard his case was biased.  Additionally, his assertions about the jurors' possible interpretations of any comments made by the court are unsubstantiated.  Conclusory and speculative assertions cannot support a claim of ineffective assistance of counsel.  *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  In sum, even assuming counsel performed deficiently, DeSautel cannot obtain relief because he fails to demonstrate any resulting

---

further documentation of the court's remarks, such documentation would not substantiate his allegation of ineffective assistance of counsel because he cannot establish prejudice.

prejudice.  Accordingly, DeSautel does not demonstrate that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.  Therefore, Ground Two, Sub-claim Three warrants no relief.

### Sub-claim Eight

DeSautel was sentenced immediately after the jury convicted him.  He contends that counsel was ineffective for not moving for a continuance or making a "formal objection" so that he could present mitigating evidence for sentencing purposes.  He further asserts that counsel's failure meant that this issue was not preserved for appellate review.  DeSautel brought this allegation in his postconviction motion.  The state court  denied it, finding that DeSautel could not establish prejudice:

> Notably, the trial judge indicated prior to sentencing the Defendant that he was "not entitled to a sentencing hearing or to a PSI based on his prior history."  Thus, even if defense counsel had objected to proceeding with sentencing at that time, such objection most likely would have been overruled.  At the risk of redundancy, counsel cannot be ineffective for failing to raise a meritless objection.
>
> Moreover, while acknowledging that he did *not* "take any joy in sending people to prison," the sentencing judge noted that the Defendant has been convicted of "a very severe crime," and proceeded to impose a harsher sentence than the prosecutor asked for.  In light of these circumstances and considering the nature of the crime, which involved robbing an elderly gentleman at gunpoint and subsequently fleeing in a high-speed chase that resulted in a car crash, the Court is not convinced that anything the Defendant's mother might have said would have inspired the judge to impose a shorter sentence in this case.  Based on the foregoing, this claim is denied.

(Ex. 10, p. 20) (court's footnotes omitted)

The record supports the denial of this argument.  Counsel informed the court that DeSautel wanted his mother to be present for sentencing, although counsel was not sure what she would say.  (Ex. 17, p. 322-23.)  Finding that DeSautel was not entitled to a sentencing hearing or a presentence investigation due to his criminal record, the court

proceeded with sentencing. (Id., p. 323.)[14] Counsel argued that DeSautel should receive a sentence lower than that sought by the State, and DeSautel addressed the court prior to the imposition of sentence. (Id., pp. 325-26.)

DeSautel does not establish that any other mitigating evidence or argument he could have presented at a subsequent hearing would have resulted in a different outcome. His suggestion that the court may have imposed a lesser sentence had counsel objected or moved for a continuance to present mitigating evidence is speculative and unsubstantiated. This unsupported assertion cannot sustain an ineffective assistance claim on federal habeas review. See Tejada, 941 F.2d at 1559.

DeSautel does not show a reasonable probability that the court would have imposed a lesser sentence had counsel sought a continuance to present mitigating evidence. As he does not show prejudice, he also fails to establish entitlement to relief on his claim that counsel failed to preserve the issue for appellate review. DeSautel does not demonstrate that the postconviction court unreasonably applied Strickland or unreasonably determined the facts when it denied this claim. Ground Two, Sub-claim Eight provides no relief.

<u>Sub-claim Nine</u>

DeSautel argues that the cumulative effect of counsel's various alleged errors warrants relief. He alleges violations of his rights under the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments. The state court rejected the claim of cumulative error presented in DeSautel's postconviction motion:

---

[14] A presentence investigation and recommendation from the Department of Corrections is mandatory before imposing a sentence other than probation "on any defendant found guilty of a first felony offense . . . ." Fla. R. Crim. P. 3.710(a). At sentencing, the State noted DeSautel's prior felony convictions. (Ex. 17, p. 322.) Accordingly, as DeSautel was not a first-time felony offender, a presentence investigation was not mandatory.

> This ground is equally without merit because "a claim of cumulative error will not be successful if a petitioner fails to prove any of the individual errors he alleges." Thus, having found no individual error in any of his other grounds, this Court finds no merit in the Defendant's claim of cumulative error.

(Ex. 10, p. 22) (court's footnote omitted)

"The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr.*, 342 Fed. App'x 560, 564 (11th Cir. 2009). The Supreme Court has held, however, in relation to an ineffective assistance of counsel claim, that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 564-65 (quoting *United States v. Cronic*, 466 U.S. 648, 659 n.26 (1984)). DeSautel has not established entitlement to relief on any of his claims of ineffective assistance of trial counsel. Thus, he fails to show that the state court's rejection of his cumulative error claim was contrary to or an unreasonable application of clearly established federal law. Ground Two, Sub-claim Nine provides no relief.

## Ground Three

DeSautel asserts that his appellate counsel was ineffective for not arguing that the trial court erred in admitting photographic evidence of rounds removed from the gun Deputy Sanders found in the car. In further support, DeSautel states in his reply that this photograph was only used to show the severity of the offense and constituted improper evidence of prior bad acts. DeSautel states that this argument was preserved for appellate review because trial counsel objected to the admission of the photograph.

During Sanders' testimony, the State sought to introduce a photograph that showed

six rounds Sanders removed from the gun.  (Ex. 17, pp. 172-73.)   Defense counsel

objected:

> [COUNSEL]:        Judge, that's the only photograph that I have an objection to.  And the basis for the objection, Judge, is clearly it shows a spent cartridge.
>                         And without getting into too much detail, Judge, I believe there was a collateral crime that's alleged to have been committed in another county where the same handgun was used in Florida, and my objection to its introduction is that it might somehow sway the jury as to a shot being fired at some previous time because it clearly shows a spent casing.
>                         And as far as the relevance towards this particular case, I would argue it doesn't have any relevance to the extent Mr. VanderKlok has never been able to testify as to the identification of this gun, as to whether it was loaded or unloaded.  And quite frankly, Judge, as to whether he's convicted or not, it doesn't depend upon it being loaded or unloaded.  I would object to that photograph.

(Ex. 17, pp. 172-73.)

The trial court overruled counsel's objection and allowed the introduction of the

photograph.  (Ex. 17, p. 173.)   Deputy Sanders testified that the photograph depicted "the

rounds that were found in the gun, that I unloaded out of the gun." (Ex. 17, p. 175.)  The

State did not address any collateral crime during Sanders' testimony. (Ex. 17, pp. 167-76.)

DeSautel raised this claim of ineffective assistance of appellate counsel in his state

habeas petition. The state appellate court rejected Petitioner's claim without comment.  The

record supports a denial of this claim.  Claims that appellate counsel was ineffective are

analyzed under the two-part test set forth in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259,

285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991).  To establish a claim,

DeSautel must show that appellate counsel's performance was objectively unreasonable,

and that there is a reasonable probability that, but for counsel's unreasonable performance,

DeSautel would have prevailed on his appeal.  *Robbins*, 528 U.S. at 285-86.

Because the implementation of state evidentiary rules is afforded wide latitude, federal habeas relief is rarely appropriate for a claim of state court evidentiary error.  *See Maness v. Wainwright*, 512 F.2d 88, 92 (5th Cir. 1975); *Boykins v. Wainwright*, 737 F.2d 1539, 1543-44 (11th Cir. 1984).   A determination of whether a proceeding has been rendered fundamentally unfair "is to be made in light of the evidence as a whole."  *Felker v. Turpin*, 83 F.3d 1303, 1312 (11th Cir. 1996). "[S]uch trial court errors are subject to the harmless error analysis and will not be the basis of federal habeas relief unless the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Sims v. Singletary*, 155 F.3d at 1312 (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993)).

DeSautel does not establish that appellate counsel was ineffective for failing to raise this issue, or that there is a reasonable probability he would have prevailed on appeal, because he has not demonstrated that the proceeding was rendered fundamentally unfair. He does not show that evidence of prior bad acts was actually introduced.[15]  Moreover, it is entirely speculative to claim that the jury would have made any deductions or conclusions that DeSautel was connected to another offense based on the image of a spent cartridge. DeSautel establishes no evidence showing that the jury was improperly led to consider the photo as evidence of another, uncharged crime.  His speculation cannot support a claim of ineffective assistance of counsel. *See Tejada*, 941 F.2d at 1559.

Appellate counsel is not ineffective for "failing to raise claims 'reasonably considered to be without merit.'"  *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000)

---

[15] Collateral crime evidence is inadmissible when it is relevant only to prove bad character or propensity.  *See* § 90.404(2)(a), Fla. Stat.

(quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)).   Furthermore, appellate counsel is not required to raise every non-frivolous issue on appeal. *Heath*, 941 F.2d at 1130-31.   Rather, "effective advocates 'winnow out' weaker arguments" even when such arguments may have merit. *Id.* at 1131.   Appellate counsel may choose to focus on the strongest claims while excluding claims that might have a lower chance of success or detract from stronger arguments. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983).

DeSautel fails to establish that appellate counsel should have brought this claim, or that he suffered prejudice as a result of appellate counsel's failure to do so.   Accordingly, DeSautel does not demonstrate that the state appellate court's decision was contrary to or an unreasonable application of controlling Supreme Court precedent or based on a unreasonable determination of the facts.   Ground Three provides no relief.

Any of Petitioner's claims not specifically addressed herein have been determined to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** that DeSautel's petition for writ of habeas corpus (Dkt. 1) is **DENIED**.   The Clerk is instructed to enter judgment against DeSautel and close this case.

It is further **ORDERED** that DeSautel is not entitled to a certificate of appealability. A petitioner does not have absolute entitlement to appeal a district court's denial of his habeas petition.   28 U.S.C. § 2253(c)(1).   A district court must first issue a certificate of appealability (COA). *Id.*   "A [COA] may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2).   To make such a showing, DeSautel "must demonstrate that reasonable jurists would find the district court's

assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)).  DeSautel has not made this showing.  Finally, because DeSautel is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 29, 2015.

Charlene Edwards Honeywell
United States District Judge

Copy to:
Jason Ryan DeSautel
Counsel of Record